The case is Odulio De Leon-Ochoa and Two other consolidated cases. This would be Mr. Chen. Yes. Good afternoon. Good afternoon your appearance, sir Rex Chen for the Flores family and we request two minutes for rebuttal very well Yes, sir, I'll point out that Douglas equally will be speaking third on our behalf He's most prepared to speak about the most recent designation issue regarding TPS And he has his own issues regarding asylum in his particular case To lead off. I just want to point out that if this court agrees that under matter of Reyes that unpublished BIA case Certain initial requirements are not do not apply to children or spouses Then this court can grant TPS to the children without ever having to tackle the imputation issue The the argument regarding matter of Reyes is now that that case had to do with nationality It was a spouse not a child and nationality not having been continuously physically present but the principle is pretty clear and the BIA recognized it was an unequivocal interpretation That this extra bulge to let spouses and children apply means they don't need to meet this bucket of requirements that initial registrants must Mr. Chen that opinion was not published So it does not have precedential value. I Thank you. I accept that now under this courts has recognized that where the BIA does take a Not-precedential decision in unpublished cases It must explain if it wants to take a contrary position later such as in the Cruz versus Mukasey case With a different issue where the BIA had taken a position regarding sui sponte reopening in numerous Because it's not even precedential within the BIA, but you want us to give it some sort of precedential value I Simply would like the court to continue its jurisprudence that it set out in Cruz versus Mukasey There were the BIA make certain positions in Unpublished decisions, it's not necessarily bound by it But should it reverse course later it must explain why it's reversing course from his previous unpublished decision So they're not bound by it, but they can't irrationally reverse course in in a in a in Explaining themselves the BIA has issued opinions that seem to be directly on point to the issues in this case, hasn't it? in our opinion Judge Fuentes. No, they they have dealt with imputation in other areas of the immigration law and Those decisions were very much rooted in the specific statute section Had that had nothing to do with TPS So only in the broadest of senses have they had decisions in this area generally But nothing regarding imputation for TPS and by looking at the decisions that they have had such as matter of ESCO bar They're very much looking at specific provisions for in that case LPR cancellation of removal none of these deal with a very different statute of TPS because with TPS Congress has created an extraordinarily generous and protective benefit for family members and people from Devastated countries if Reyes doesn't get you where you want to get to what what is your strongest point? should the court not agree with Reyes then there certainly is the imputation argument and There are many distinguishing factors between this Mr. Chen, I'm sorry to interrupt you but Reyes Was about a spouse of a national and nationality requirement Had nothing to do with residency. Did it you are correct judge officer, but there's no reason It's simply laid a principle that said this idea that spouses and children can do late initial registration They don't need to meet these initial requirements. So we don't see a Mr. Chen may I ask because our time is limited Can you tell us why we should not follow the reasoning and the holding of the Fourth Circuit case in Cervantes? Yes, judge officer the reason one of the big reasons is that the The Cervantes family could not raise a number of the arguments that we are raising in this case The Fourth Circuit does not have the full argument that's being raised here for example the Cervantes family never even discussed Augustine and The Fourth Circuit decided that the TPS area was in some way very much like what this court addressed in Augustine What we are Explaining in our opening brief and our reply brief is how this case is very different with the TPS statute from Augustine So Augustine doesn't help you at all. Does it? Augustine is not helpful to us and there are many reasons that we find to distinguish it from the TPS Situation and the requirements that are we're talking about right here on the subject of imputation The holder case out of the Ninth Circuit doesn't help you either does it because that case Rejected imputation unless there's a requirement for state of mind or intent It would if this court agrees with Ramos Barrios versus Holder in the Ninth Circuit Which set out an approach that there must be some form of intent in the requirement being discussed We believe that would still allow us to prevail because the requirements in this specific statute for TPS Do include an intent essentially an intent requirement What's important to understand is that these? Requirements, sorry, but the issue is is residents and continued residents not domicile and residents of course comprehend an intent or state of mind requirement and here's my explanation that's actually I agree with where you're coming from but If we look specifically at let's look at the having continuously resided requirement. It's actually not a residence requirement It's continuously resided and I'll show you the difference. The difference is that within the INA itself It says that this idea of continuously resided is Not broken by a brief and casual trip outside the u.s So Congress itself has said that in this odd little area of TPS continuous residents It's not merely as in Ramos Barrios this Ninth Circuit case this Mathematical reflection of physically where were you because you can have it even though you've been outside for some time a brief trip So it's really a marker for intent because after all the idea of taking a casual trip not breaking Your presence is what it where do you intend to be? Where do you intend to want to stay? So isn't the whole point of TPS that if there's a catastrophe in a country if there's a war if there's a hurricane And the people who are out of the country will not be sent back until things are resolved But people who leave the country to come here After the disaster has happened are not covered by the intent of that legislation Which was to deal with those who are in the country who we aren't going to send back It's not that's not the complete explanation of TPS because One of the main principles of TPS was not just what you're pointing out judge Roth But also family unity and this idea of extending TPS to children Deal with people people who were caught in this country Who were in this country will not be sent back to someplace where there's a disaster And now we turn to the issue of but what about their spouses and children and Congress has said Who are who are not with them at that moment, but Congress has cast a protective net to include spouses and children Also, it's a separate We respectfully disagree with that limitation of it the main TPS portion is for a certain group of people a very finite defined community and then teeth and now there's an Extension of a broadening of the TPS just for a very small list of existing family members So it's not just about these people they've extended it To two spouses and children. So that is that is not the only concern They're actually having a protective umbrella for spouses and children, too but not any spouse and children who come into this country after the TPS has been it does Our position is absolutely include spouses and children who come afterwards This idea of this late TPS is not merely to excuse those few children that fell asleep and forgot to apply Within a time period there's so few of those It's actually a broader protective net to say it's not just anyone from that country They have to have a parent or a spouse who's here and fully qualifies. But once you got that Then yes, let's bring in these other people just as the BIA in a not presidential decision said It's unequivocal. That's the purpose Let's let these spouses come in even though they're not even from the country an important phrase is the most recent designation which is a date in which the Nationals have to be present physically present in this country or have to be present as of that date according to the three Board of Immigration Appeals decisions aren't those decisions in that interpretation entitled to deference whether it's Chevron deference or Skidmore deference we do not believe so because They did not issue their decision in a presidential decision They do not claim that the statute is ambiguous such that it is in under Chevron step zero an area where it deserves deference and They did not invoke if the rationale if the reasoning is persuasive aren't they entitled to some deference? They are the agency that's charged with interpreting their own statutes and shouldn't we rely on their experience and expertise in interpreting the statutes only if the statute is ambiguous and If they under under the me the doctrine, you know, it's funny, but you say it's not ambiguous. Is that your position? Regarding the Reyes argument, it's not ambiguous. I thought in your briefing you say it's it's not ambiguous The government says it's not ambiguous, but then you you present two different views of what it means It's funny. Everyone thinks it's not ambiguous, but they believe it's a different thing It suggests to me the government has an improper position that's what it suggests to me but people differ Okay, yeah regarding deference the last point. I think I see your time is up You say the Opinions are not entitled to and one thing to take a look at is Give the opinions any deference or that this is a plenary review We believe they deserve no deference if the court would reread the BIA's decisions They're actually a bit shocking in their lack of analysis for most of the three decisions It's just not something that's well reasoned or provides a coherent basis to review What it is. You're Possibly deferring to thank you. Mr. Chen stand by for a moment. Judge Aldous hurt any further? Thank you very much Miss Gonzalo, is that pronounced correctly? Yes, Your Honor. Thank you I represent LP in this matter and I wish to address the court specifically with regards to the question of whether the Board of Immigration Appeals provided substantive consideration of the respondents request or petitioners request for humanitarian TPS based on humanitarian considerations your honor the Board of Immigration Appeals in its decision simply said that it lacked jurisdiction to consider the the matter because it was restricted by statute and regulations we disagree with that interpretation the statute it seems to me is clear in stating that the purpose of TPS is to promote family unity to assure family promote family unity and to I'm sorry your honor I think that is one of the humanitarian it is yes your honor does the does the Board of the jurisdiction to take into account humanitarian consideration we believe that it does your honor there is this specific language in the statute which gives the decision-maker discretion to consider issues specifically with respect to humanitarian purposes family unity and where it's in the interest of the public in the public interest and I'm referring to 245 point sorry 1254 a C capital a C to capital a little to that provision your honor is talking about who is inadmissible under the statute and it allows the decision maker to decide whether or not there are specific grounds that would that are not applicable in terms of determining whether someone is inadmissible and then that provision allows a decision-maker to decide whether or not to discount other inadmissibility grounds specifically for the purpose of for humanitarian purposes family unity in the public interest there is I know your time is your time is limited can you help us out have any courts of appeals sustain your position that you are presenting to us this morning I'm not aware of the issue having been raised in another court of appeal your honor thank you what were your request so you think we send this back to the Board of Immigration Appeals to take into account humanitarian considerations specifically family reunification as a as a basis for allowing because it is it is required to do that your honor and so for the board to simply say that it doesn't have jurisdiction is incorrect okay judge Alvis it was right your time is limited your red light is on thank you very much mr. Eakley good afternoon good afternoon may it please the court my name is Douglas Eakley and I represent petitioner Roger Reyes Oliva whose name appears in the caption as mr. de Leon Ochoa I will hazard to address the court's questions with respect to the Cervantes decision and the most recent designation first but I do have an asylum argument that I would like an opportunity to present very briefly simply put I think the Cervantes decision and by the Fourth Circuit is to to equating most recent designation in the statute with initial designation I think if their reading of the statute is quite clear that the Congress in framing the TPS referred to designations in several different portions of the statute to include initial designation the term which it uses and extensions of designation or extended designations and the rule is and and the reason for that is pretty clear as you can see in the most recent designation or extended designation of Honduras the ninth time and to judge Roth's point the reasons for the extension of designation really had very little to do with Hurricane Mitch which occurred in 1998 instead what happened was several other calamities befell Honduras in 2008 and 2009 and they're enumerated in the in of extended designation namely you had a tropical depression 16 other natural disasters 19 at 2009 political crisis which exacerbated the effects of the global economic distortion all of which led the Attorney General or the Secretary of DHS to conclude that the effective date of the most recent designation that the Honduras was incapable of temporarily to adequately handle the return of its nationals now the Attorney General Mr. Gracely this is judge all the cert in in Cervantes on this issue did not the court emphasize that the Attorney General had traditionally followed that interpretation it did your honor but the Attorney General and the BIA have followed that harmonizing it with the legislative purpose behind the TPS statute it's simply with the argument we will go against the decisions long time of the BIA and the Attorney General that is correct your honor although those decisions those decisions have been unpublished and without explication all right now may I ask you this you felt that the Cervantes opinion was was not reasoned properly do you object to its treatment of our opinion in Augustin I do not your honor and I'm not addressing the imputation issues in that in that decision I'm really talking about the construction of the statute and the accordance of the Attorney General's position which I think is untenable that somehow it's appropriate under the statute to reach back and apply 1999 as the statutory cutoff for any eligibility by an Honduran in this country notwithstanding subsequent disasters occurring and notwithstanding Honduras's continued inability to your argument if we we accept your argument sir this only resolves the physical presence requirement you still have to continuous residence requirement yes your honor and and and it if if you accept my first argument radical though it may appear at first blush did you restate that position mr. equally if the court were to accept the most recent if the court were to accept the construction of the statute to mean that most recent designation includes extensions of designations or extended designations if the court accepts that then it logically follows that the Attorney General upon providing notice of extended designation is required by statute to select a date no earlier than the notice but it could be a later date for purposes of continuous residence and the reason for that is pretty clear for you mr. equally the most recent designation is the date of the most recent extensions yes your honor but as the three cases the three opinions in these consolidated cases say just the opposite which is that an extension cannot be the most recent designation that they take that position but it's it within by ipsy-dixit your honor there's no analysis of why or how that conforms with the legislative purpose I may not like it but you have three different Board of Immigration Appeals judges and my question to you is in the aggregate aren't these opinions entitled to deference I don't with respect and first they're unpublished and and secondly with respect to mr. Reyes Oliva's appeal there was a single judge deciding it but I don't think that if if there is an agency decision however consistent applied over the years that inconsistently and misconstrues the lead the clear legislative wording and intent then it really is for this court to come in and correct it and just it just the other the other the other reason this just is nonsensical is how is it that with all of these recent disasters in Honduras and a recent application by Honduras to be redesignated as a TPS status a father with TPS status dating from 1999 is permitted to remain but his son is sent back into into a state which the State Department and the DHS have found to be inadequate and capable of dealing with it does sound like the humanitarian concern now just to get back to judge all deserts question about the properly see to recall that in the with respect to the continuous presence it's the effective date as of the most recent designation with respect to the continuous desert residency it's a date determined by the Attorney General that too is controlled by statute and the statute says the designation of a foreign state shall take effect upon the date of publication of the designation or such later date the reason for later date for residents is someone may be established residents when a disaster befalls so that's why I say it logically follows judge all desert if we get to that point that that if the statute is construed to to take into consideration new disasters trapping people in this country then mr. Reyes Rivera Oliva should be entitled to the way the DHS has been there I don't know the answer to that judge Ross it has brought judge Roth that practice has been to provide a notice of extended designation which has all of the attributes of a new designation except the returning general reserves the date looking back to the original designation the initial designation a term used in the statute as the control date for purposes of continuous residency and then they also equate pretty much continuous presence as well if I may just just turn very briefly to to to the asylum point because I think it's it's it's an important one and and it's not I think a point not addressed in our briefs as well as it should be and I apologize for to take two minutes mr. Reyes Oliva Oliva contends that he left Honduras and is able or unwilling to return because of a blood feud between his mother's family the torsos and another family the not Jarrah's the immigration judge specifically found that him to be a credible witness and determined that familiar racial relations constitute membership in a social group for purposes of demonstrating one of the protected grounds under the INA and although she feel found that he had a subjective fear of returning to Honduras she concluded that he had not established objectively that it was objectively reasonable and with respect I believe that that overlooks some key elements of the record in the first place the UNHCR position paper on claims for refugee status specifically calls out blood feuds involving members of one family killing members of another family didn't present any actual manifestation of this feud any killings since what that is correct but what what the record does contain is is a review of a book that that that calls out the history of this particular blood food I don't think there's any dispute that there was or may still be a blood feud between these two families the book indicated the feud had been resolved in 1996 there was no in no evidence presented to the immigration judge to challenge or to demonstrate that it was no longer accurate well actually there's a review of the book that indicated there was a a truce in 1996 but then it was followed by a murder in 1999 you also have contemporaneous descriptions not only of Honduras but of this particular Department of Aloncho which reports that revenge killings and blood feuds are common in some parts of the country especially in the Department of Aloncho that's at CA 308 you have another report by a graduate student of Berkeley also reporting that Aloncho department council let me stop you what is our standard of review on this issue I know the answer but it doesn't come immediately to mind I I think it's abusive discretion but there's the record the the is it not is it not you're talking about facts you said the facts are that this still continues wouldn't that come under the clearly erroneous yes I think I think you're right your honor and there's no men you have a particularly unique corner of the world where this sort of lawlessness including blood feuds exists you have a blood feud in this particular family or these families that that persisted for a five murders of record most recent 1999 and the question is whether or not those those conditions in the country in the home country provide a sufficient objective basis for this subject this credible subjective fear of persecution okay thank you thank you very much very much mr. you won't go back to mr. Chen yeah no we'll get back to you afterwards pronounced miss Parker good afternoon your honors may counsel may I interrupt you it would be helpful to all of us that if you respond to the issues presented in this oral argument yes I hope so good afternoon your honors may it please the court my name is Aviva Poxer for the respondent the Attorney General these three petitions for review should be denied your honors for the simple reason that petitioners have not established their statutory eligibility for the and in fact they conceded as much but they're basically asking you to do is rewrite a very clear statutory scheme and the TPS program as you were mentioning judge Roth is here to protect a discreet group of individuals and that group of individuals are people who are essentially stranded in this country by virtue of a natural disaster civil war or some sort of a calamity and the granted this type of protection which unfortunately does not include individuals who arrived here years after the calamity occurred by virtue of their late arrival they're not seeking protection from that calamity because they came here years later what if there is a new calamity that causes the extension of a designation your honor if there is a brand new calamity the Secretary of Homeland Security will designate again there'll be a new designation the staff ever happened not I think there was originally some issue with extended voluntary departure with which preceded TPS for purposes of El Salvador I think that's the closest that has occurred but the statutory scheme is clear you have a designation and then extensions of that designation there's no designation and redesignation and the statute very very clearly spells out designation extension that's it and the Federal Register notices which the court relied on in Cervantes which we definitely think you should follow because it's directly on point said the government has consistently in every TPS notice at issue said you have to meet the original physical presence and that only makes sense in the context of this program it doesn't seem to make sense though is as you were started to say that people come to this country and get stranded meaning they can't get back but it also means that they're not here with their families their spouses or children is there not a remedy for that circumstance that is to reunite the family I would say that stranded in some certainly or individual but I'm talking about a family that's because of the disaster right home country right well we don't see TPS as being a family unity type statute or program but individuals may certainly go to the Department of Homeland Security and ask for some sort of humanitarian consideration there is barring any of these petitioners from going to the Department of Homeland Security and saying look we're not statutorily eligible we don't have any way to stay here can you do something for XYZ reasons can you defer a removal and the Department of Homeland Security maybe could do that but that would be the remedy it does happen absolutely it does happen it didn't as far as I know it hasn't happened here but says it's a matter for the Board of Immigration appeals they should have considered humanitarian factors no I'm respectfully we disagree the Board of Immigration appeals here is bound by the statute the statute doesn't say you consider humanitarian concerns except perhaps in the context of an inadmissible alien for example an alien who has committed crimes these petitioners are not inadmissible for any of the reasons that would garner a humanitarian concern here and the board was correctly right it doesn't have the ability to rewrite this statute so it's your position that humanitarian is directed to the petitioner himself or herself rather than to the family of the petitioner exactly it's it's for the person who is themself applying for TPS and is inadmissible but perhaps could otherwise meet let's say the physical presence and residence requirements did the government appeal the decisions of the Ninth Circuit which essentially said that most recent designation refers to the most recent extension not the original date for TPS status I'm sorry I'm not the government appealed as Ninth Circuit decisions which said that most recent date refers to the extension date I'm not aware of those decisions I'm not sure if you're talking about the imputation for purposes of residence decisions yeah oh I don't think the to you on that to tell you the truth your honor I'm not entirely sure but I will say that the Ninth Circuit in the in the Berrios v. Holder case itself recognized there's a distinction here to be made between residence and domicile and this court and it actually mentioned its prior disagreement with this court in August in and and recognize that there is a difference between a period of residence and imputation of for purposes of domicile that's where those cases split and here you have we are fortunate to have a very clear statutory definition of residence at 101 a 33 of the INA that says it's the place of actual abode without regard to intent so there is where the TPS parts ways with the Ninth Circuit cases that imputed domicile and this court recognized as much in Augusta and and saw that there is this this difference between the definition of residence and the definition of domicile and the Fourth Circuit in Cervantes which we again think that you should follow said we agree with the third you know we recognize the Third Circuit's position in August in we think it's correct and we think that the Attorney General's interpretation here for the purposes of TPS is reasonable and just to address the other issues that were raised in terms of this unpublished board decision in Reyes without even regard to issues of deference or no deference the Reyes decision is apples and oranges for purposes of this case the Reyes decision had to do with an individual where nationality and and the spousal relationship was in question we don't know in Reyes whether that individual otherwise met the physical presence and residence requirements which are at issue here so it's really the comparison is apples and oranges whether or not you defer to it and in terms of deference this court has given deference to board decisions see Augustin, see Silva-Renfrigo and cases of that nature this court hasn't had an issue with providing Chevron deference and we think that here you as you pointed out Judge Fontes we have three board decisions that are totally consistent in their outcome you have a Fourth Circuit precedent decision which even applying Skidmore deference without deciding the issue said the consistently applied this program and it's unfortunate the petitioners don't qualify but Congress has spoken as to who is going to apply who is going to be eligible to apply and get this form of temporary protection and unfortunately it's not these petitioners. In the phrase most recent designation it suggests to me that there can be more than one, various designations. Yes. What do you understand the phrase to mean? Most recent designation again I think encompasses this concept that a country can be designated, the designation can be extended and then later on let's say ten years down the road you have another the designation another. The petitioner suggested it can be the extension is the most recent designation. Right but there's no authority for that I mean I don't necessarily see where that I understand that they would like to prevail and that's their argument to get there but I don't see any authority that says extension equals designation and in fact if you have statutory language that points out just the opposite I don't really see where we get there. Well why most recent designation as opposed to something like original designation? Well because this I think because this scheme contemplates a possibility that a country will require in the course of its history more than one designation. Has that ever happened? Not to my knowledge your honor I do know that El Salvador was given extend many residents of El Salvador were given extended voluntary departure and then when the statute was amended they were TPS but it certainly is possible that again a country could be designated at one time and then years down the road and that would be another designation and I don't see any authority for the proposition that extension equals designation I think that's basically rewriting the statute. Are there catastrophes that have happened in Honduras or El Salvador that have led to an extension that might in and of themselves be grounds for an original designation? Well again potentially but that's something that's designated by the Department of Homeland Security and I'm not really qualified to speak to how bad the Tropical Depression had to have been in order to engender a new designation again that's something that's within the province of the Department of Homeland Security in conjunction with the country at the government of the country at issue. If we should conclude that the Department of Homeland Security has been redesignating when it should in fact be giving a new designation to a country can we do anything about it? I don't believe so your honors I think the petitioners would have to be raising that sort of a sort of a complaint I don't think again that it's it is properly within the province of the Department of Homeland Security with in conjunction with the foreign government's request to be doing those designations. As to the asylum claim of Mr. Reyes I don't want to belabor the point but there is no his record does not compel the conclusion that he established a well-founded fear of persecution and that's the only issue at play in this case at this time and as you pointed out Judge Roth what we have in the record is evidence that he even aside from the evidence that said okay the last this feud was resolved in 1996 he says no I guess it wasn't totally resolved 1999 was the last murder. He left the country six years later and didn't claim that anything happened to him in those six years and I think also tellingly he testified he has seven brothers who remain in Honduras in the exact as far as we know the exact location where this feud is supposed to be taking place and as far as we know no harm has befallen them other than one brother feels that his liberty has been circumstruct circumscribed by fear of this feud and the fact that his dad told him to watch out that's all that we have and that evidence does not compel the conclusion that he's eligible that petitioner is eligible for asylum he does claim that his particular area of this kind of Honduras is prone to these kinds of feuds but a sort of general statement also isn't enough to get him there unless you're gonna unless you unless you're gonna be saying that we need to grant asylum to everybody from this area who claims that his family is involved in some sort of feud which I don't think any of us are are prepared are prepared to do. Well now a judge in the Ninth Circuit just held I think yesterday that women from Guatemala can be granted asylum because of the failure of the Guatemalan police to adequately investigate the high murder rate of I haven't seen the case but I will say that I didn't see it your honor I'm sorry I was in transit yesterday but I will say that you know that sounds like a classic Ninth Circuit decision. No comment your honor I will say though Judge Roth that this case didn't turn on the issue of is the government we didn't even get here to the issue of is the government unable or unwilling to protect which I assume it is what the Ninth Circuit decided in that case that's really not an issue here. It was not the Ninth Circuit it was a district judge within the Ninth Circuit. Oh okay yeah in any event that that's really not the issue here. Maybe it was the Ninth Circuit. I'm sorry I read it in passing in the newspaper. I'm sorry your honor I didn't see that. I want my kids to sit in the Ninth Circuit and I'll be with them in November and I will be a good boy when I'm there. Thank you your honor. If the court has any other does the court have any other questions or anything else I can answer? I have none. Thank you your honors we just to sum up I will say that the government believes that these three petitions for review should be denied petitioners are statutorily ineligible for the belief that they seek this court should follow Cervantes and not rewrite the statute and find that the board in these three decisions consistently applied the TPS program as to Petitioner Reyes. This record does not compel the conclusion nor is there substantial evidence to support his position that he established a well-founded fear of persecution. You have some time left maybe you could just briefly comment on how we should whether they're entitled to deference or not because you you say that the phrase most recent designation is not ambiguous as Mr. Chen says also but then you both come out with totally different meanings of what the phrase means sure which suggests to me that the phrase is ambiguous now what what level of deference should we give the underlying board opinions whether it's Chevron or Skidmore or no deference or we should look at this case under plenary review what is your your view on that? Well we think that it's Chevron your honor we don't think the statute is ambiguous but I would not submit a brief that didn't cover the basis and say okay well even if it is ambiguous you need to defer if we go to Chevron step two we're still talking about deferring to the agency's reasonable interpretation so we absolutely think it's Chevron deference you know as I mentioned this court has applied Chevron deference even in Augustan which was the the case that was cited here. You would think that if the issue is important enough when it got to the BIA that they would have issued a full three judge opinion. It's possible your honor but they're under no obligation necessarily to do so to do so in any case and I think even if you applied Skidmore because the court in Cervantes said okay there's this issue about Chevron versus Skidmore and it's sticky so we think even under Skidmore the board's interpretation is reasonable so we think yes you should be applying Chevron but we also think that even if there's some question apply apply Skidmore and we'll get there too and that's fine as well. Okay very good thank you. Thank you your honors. Mr. Chen. Thank you I will try to limit myself to probably just four very narrow points and if there's time Mr. Eakley may refer to their question about any basis for one of the instructions of the issue of most recent designation. Judge Daldasert you asked about treatment of Augustine by the Fourth Circuit well regarding imputation they really barely discussed it and I think the key issue is whether the TPS statute is something where residence is just a mechanical reflection of where someone is. If the government keeps pointing to this generic definition of residence for the entire INA they are not addressing how the very TPS section in the INA explains continuously residing does not mean the same thing as this generic residence requirement elsewhere in the INA. So look to the TPS statute portion in the INA it's not the same thing. Another point is that the government has portrayed the TPS statute as something that it does not deal with family unity so we shouldn't be talking about it. That's actually an improper characterization a vastly improper characterization of TPS. As we laid out in our opening briefs one of the main purposes of TPS including one of the main things said by the congressman introducing it was family unity and that's the vision of bringing families together. Why would you allow spouses and children to apply if there's no family unity being concerned you would just cut it off with those who meet the Isn't that application for spouses and children for the original registration period? It's for late initial registration so spouses and children for late registration. But isn't it for spouses and children who were present at the time of the initial or most recent designation? If you're asking would they also be able to apply those people could apply but why create a whole structure to let spouses and children apply late if you're just thinking you could have stopped it they could have just applied in the initial period you're really not you're helping hardly anybody by having this whole section just for those who could have gotten it right in the first place. The whole thing's about family unity or it's just superfluous practically. Briefly the third point is that they mentioned they try to skate away from the Reyes decision that unpublished PA decision but they've never in any of their opposition briefs or today explained why it's okay to set aside this nationality requirement but no you can't set aside this having been physically present requirement. They don't offer any explanation why one is different from the other anywhere in their briefs. And the one thing I'd like to point out in my fourth point is that DHS never designates a country that already has TPS that's just not how they do it. It's never been a debate or a discussion of TPS is going to expire are they going to either extend it or designate a new one because we already have it. It's all about when are they doing their usual extension for the ninth time or eighth time and when they extend it they don't say yes there have been many recent disasters but we're choosing not to do a new designation that's just not how it operates. So they're trying to point to a theoretical possibility that no one is even considering. It just doesn't exist. Would you like just a brief point from Mr. Eakley. We give Mr. Eakley a minute or two. Thank you Mr. Eakley. Thank you very much. Two points. First the suggestion that there is no authority for the equation of most recent designation with extension of designation. First legislative purpose. Second the use of the term most recent suggesting a repetitive form of designation and thirdly the statute itself under the rubric designations section 1254 B includes a description of both initial designation it calls it initial designation and subsequent extensions of designations. Is there any legislative history that would suggest that most recent designations would would encompass repetitive designations? I don't I don't know your honor. I've come very lately to this case and I didn't have time to go back more excruciating more exactingly to see there was none that I could find one way or the other except that when I look at the way the Attorney General has been extending designations for newly occurring disasters that certainly fits within the ambit of legislative intent for the statute. Finally on the on the silent point as the the UNHCR position paper on claims for refugee status reports traditionally to adult males who are or can become targets of blood feuds that was consistent with the testimony. Mr. Reyes Oliva's younger brothers are with the oldest is 14. He has one older brother who is confined essentially to his home and his and his job because of his continuing concern for persecution. Great. Thank you. Thank you. Thank you very much. Thanks to all counsel. Ms. Moxner, thank you very much. Mr. Chen. Judge Juwentis, I would like to have a transcript prepared of this excellent oral argument at the expense of the government. The government is willing to do that in this case I'm sure. We will order a transcript and the government will pay for the transcript. Thank you. Thank you. That's a good idea. Mr. Chen, are you here pro bono? And I know all three of you. The court really appreciates your participation in this case. Thanks to all of you, your friend, thank you very much. Yes excellent briefs and presentation. Thank you.